UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA COPENHAVER,

        Plaintiff,                                    Hon. Richard Alan Enslen

v.                                                    Case No. 1:05 CV 675

CLAIRE HAMMER, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Parker's and Merlau's Motion to Dismiss, (dkt. #104), Plaintiff's Motion for Summary Judgment, (dkt. #113), and Defendant Parker's and Merlau's Motion for Summary Judgment. (dkt. #118).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion for summary judgment be **denied**, Defendants' motion to dismiss be **granted in part and denied in part**, and Defendant's motion for summary judgment be **granted in part and denied in part**.

**BACKGROUND**

Plaintiff initiated this action on September 30, 2005, alleging that various individuals denied him proper medical treatment in violation of the Eighth Amendment to the United States Constitution and the Americans with Disabilities Act (ADA). (Dkt. #1). On November 3, 2005, the Honorable Richard Alan Enslen dismissed without prejudice a great many of Plaintiff's claims for failure

to properly exhaust administrative remedies, permitting only those claims against Defendants Merlau, Gelabert, and Parker to go forward. (Dkt. #4-5).

On July 11, 2006, Plaintiff submitted an amended complaint in which he asserts various claims that Defendants Merlau, Gelabert, and Parker violated his rights under the Eighth Amendment and the ADA. (Dkt. #76). On August 7, 2006, the undersigned recommended that Plaintiff's ADA claims be dismissed for failure to state a claim on which relief may be granted. (Dkt. #80). The Honorable Richard Alan Enslen subsequently adopted this Report and Recommendation. (Dkt. #87-88).

Plaintiff, Defendant Parker, and Defendant Merlau have now moved for summary judgment. Defendants Parker and Merlau have also moved to dismiss Plaintiff's claims for failure to exhaust administrative remedies. As discussed below, the Court recommends that Plaintiff's motion be denied and that Defendants' motions each be granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts...in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989).

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Furthermore, mere allegations do not suffice. *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

**I.          Defendants' Motion to Dismiss**

Plaintiff has asserted a variety of claims against Defendants Parker and Merlau. Plaintiff asserts that Defendant Parker denied his requests for medical treatment relating to complications he allegedly experienced subsequent to surgery to remove a pilonidal cyst. (Dkt. #76 at ¶ 13). Plaintiff also asserts that Defendant Parker failed to "provide timely HIV and Hepatitis blood-testing when [Plaintiff] was potentially exposed to same" and failed to "adequately provide notice and adequate control of the institutional outbreak of a flesh-eating bacteria." (Dkt. #76 at ¶¶ 13, 22). Plaintiff does not indicate the date(s) on which these incidents occurred.

Plaintiff asserts that in retaliation for pursuing the present action, Defendant Parker (at some point subsequent to April 6, 2006) retaliated against him by "forcing him to be treated by Defendant Gelabert" despite the fact that Plaintiff was pursuing legal action against Defendant Gelabert. *Id.* at ¶ 15. Plaintiff asserts that Defendant Parker directed a nurse to discontinue Plaintiff's coronary artery disease medication. *Id.* at ¶ 16. Plaintiff does not indicate the date on which this alleged incident occurred.

Plaintiff asserts that on April 25, 2006, Defendant Parker ordered prison staff to conduct a shakedown of Plaintiff's cell. *Id.* at ¶ 17. During this shakedown, Defendant Parker discovered that Plaintiff was in possession of nitroglycerin tablets. *Id.* Determining that Plaintiff did not have authorization for such medication, Defendant Parker charged Plaintiff with possessing contraband and directed prison staff to "remove" Plaintiff's nitroglycerin tablets. *Id.* at ¶¶ 17-18. Defendant Parker also "pressured" a nurse to testify falsely at Plaintiff's subsequent major misconduct hearing. *Id.* at ¶ 19.

Plaintiff asserts that on October 7, 2004, Defendant Merlau denied his requests for the following prescribed medications: (1) Prilosec; (2) Imdur; and (3) Lopressor. *Id.* at ¶ 34. Plaintiff further asserts that Defendant Merlau "acted in a manner not consistent with nationally accepted methods of practice for a registered nurse" and "acted to create or cause alarm/distress within the Plaintiff being fully advised of the plaintiff's mental health issues." *Id.* at ¶ 36.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

Plaintiff asserts that he pursued to completion two grievances which sufficiently put prison officials on notice of all the claims asserted in his amended complaint. Defendants Parker and Merlau assert that Plaintiff's claims against them must be dismissed for failure to exhaust administrative remedies. For the reasons discussed below, the Court concludes that Plaintiff has properly exhausted only two of the claims asserted in his amended complaint.

On October 7, 2004, Plaintiff submitted a grievance in which he alleges that Defendant Merlau refused his requests to obtain the following prescribed medications: (1) Prilosec; (2) Imdur; and (3) Lopressor. (Dkt. #1, Exhibit 14). Plaintiff pursued this grievance through Step III of the grievance process. Thus, Plaintiff has properly grieved his claim that on October 7, 2004, Defendant Merlau failed to provide him with his prescribed medications. However, this grievance makes absolutely no mention of the allegation that Defendant Merlau failed to comport with nationally accepted nursing practices or acted to cause Plaintiff to experience alarm or distress. Thus, Plaintiff has not properly exhausted these claims. Moreover, even if Plaintiff had exhausted these claims they would be subject to dismissal for failing to assert a claim of constitutional dimension.

As for Plaintiff's claims against Defendant Parker, Plaintiff submitted a grievance on April 15, 2005, in which he asserted that Defendant Parker (and others) had refused to treat the "complications" he was experiencing related to surgery he had undergone more then seven years before to remove a pilonidal cyst. (Dkt. #1, Exhibit 4). Plaintiff pursued this grievance through Step III of the grievance process. Accordingly, Plaintiff has properly grieved his claim that Defendant Parker denied his requests for treatment related to his 1997 pilonidal cyst removal surgery. This grievance, however, fails to put prison officials on notice as to any of the other claims asserted against Defendant Parker.

The Court, therefore, concludes that with respect to Defendants Parker and Merlau, Plaintiff has properly exhausted only two of the claims in his amended complaint: (1) his claim that Defendant Parker denied his request for treatment of the alleged complications he was experiencing from his 1997 pilonidal cyst removal surgery; and (2) his claim that on October 7, 2004, Defendant Merlau failed to provide him with his prescribed medications. For the reasons discussed above, the Court recommends that the remaining claims against Defendants Parker and Merlau be dismissed without prejudice for failure to exhaust administrative remedies.

**II.        Defendants' Motion for Summary Judgment**

As previously noted, Plaintiff has asserted several claims against Defendants Parker and Merlau. Defendants Parker and Merlau assert that they are entitled to summary judgment as to all of Plaintiff's claims. As discussed above, the Court concludes that with respect to Plaintiff's claims against Defendants Parker and Merlau only the following two claims have been properly exhausted: (1) Plaintiff's claim that Defendant Parker denied his request for treatment of the alleged complications he was experiencing from his 1997 pilonidal cyst removal surgery; and (2) Plaintiff's claim that on October 7, 2004, Defendant Merlau failed to provide him with his prescribed medications. For the reasons discussed below, the Court recommends that Defendant Parker be granted summary judgment, but that Plaintiff's claim against Defendant Merlau be permitted to go forward. The Court need not consider Defendants' motion for summary judgment as to those claims which the Court finds have not been properly exhausted.

A.     Plaintiff's Claim against Defendant Merlau

Plaintiff asserts that on October 2, 2004, and October 4, 2004, he completed requests to obtain refills of various medications. (Dkt. #1, Exhibit 14; Dkt. #76 at ¶ 34). Plaintiff asserts that he was called out of his cell on October 6, 2004, for "medication pick-up." (Dkt. #1, Exhibit 14). According to Plaintiff, he was given only some of the prescriptions he had requested. Specifically, Plaintiff was not given the following prescriptions: (1) Prilosec; (2) Imdur; and (3) Lopressor. Plaintiff asserts that he spoke with Defendant Merlau the following day in an attempt to obtain his prescriptions. According to Plaintiff, Defendant Merlau told him that he "should kite again, or if you did not get 'em, then your order is expired." Plaintiff asserts that he then showed Defendant Merlau his "medication cards" which demonstrated that his prescriptions "were valid until March 6, 2005." According to Plaintiff, despite being presented with evidence that Plaintiff's prescriptions were valid, Defendant Merlau refused to make any attempt to obtain Plaintiff's medications or to even verify if Plaintiff's prescription request had been received by the pharmacy. *Id.* Plaintiff asserts that Defendant Merlau's conduct violated his Eighth Amendment right to be free from cruel or unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06.

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*,

511 U.S. at 834. If the objective test is met, the Court must then determine whether the official possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.*

In other words, Plaintiff must establish that Defendants "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847). To establish that Defendants acted with the requite culpability, Plaintiff must establish either that Defendants possessed actual knowledge that he experienced a serious medical need or by demonstrating that the circumstances clearly indicated that he was experiencing serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895-96 (6th Cir. 2004) (citation omitted).

However, where a prisoner claims that his requests for medical treatment were delayed (rather than denied), the court may need to evaluate the effect of the alleged delay in treatment. *See Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). In *Napier*, the court reviewed the dismissal (on summary judgment) of Napier's claim that while he was incarcerated prison officials did not permit him to attend a scheduled dialysis treatment. *Id.* at 740-42.

Napier was jailed on December 4, 1997, at which time he informed jail officials that he suffered from kidney failure and was scheduled to attend dialysis the following day. *Id.* at 741. Plaintiff did not attend this scheduled dialysis session, however, and was released from jail late in the evening of December 5, 1997.

*Id.* Napier asserted that jail officials did not permit him to attend his dialysis session in violation of the Eighth Amendment. *Id.* at 740-42.

The court noted that Napier, who had been incarcerated for only 29 hours, could have sought dialysis treatment immediately upon his release from jail, but failed to do so. *Id.* at 742-43. The court further observed that Napier failed to attend his scheduled dialysis session the following Monday, December 8, 1997. *Id.* at 743. The court, therefore, interpreted Napier's claim as a delay of medical treatment claim rather than a denial of treatment claim. *Id.* at 742-43. The court indicated that to determine whether the alleged deprivation was "sufficiently serious," as required by the objective component of the Eighth Amendment analysis, the court must examine the "effect of the delay in treatment." *Id.* at 742 (citations omitted). In this respect, the court held that

> [a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.

*Id.* (citation omitted).

In analyzing Napier's claim, the court noted that his treating physician testified that "missing the treatment did not affect [Napier's] mortality or morbidity." *Id.* at 743. A medical expert also testified that while Napier "should attend all of his treatments," there was no evidence that he suffered "any medical detriment" by missing his December 5, 1997 dialysis treatment. The court, therefore, concluded that Napier "has not offered any medical evidence to show that he suffered a detrimental effect from being kept from his scheduled dialysis." Accordingly, the court concluded that the district court properly granted summary judgment to defendants. *Id.*

Following *Napier*, if a prisoner asserted that he experienced an unconstitutional delay in medical treatment, his claim was subject to dismissal unless he submitted medical evidence establishing that

-9-

the alleged delay in treatment he experienced caused him to suffer a detrimental effect. However, in *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), the Sixth Circuit revisited this issue and clarified its holding in *Napier*.

In *Blackmore*, the Kalamazoo County Sheriff's Department arrested Blackmore at approximately 3:30 a.m. on May 27, 2000. *Id.* at 894. Blackmore was booked and placed into a cell at approximately 5:45 a.m. Approximately one hour later, Blackmore began experiencing abdominal pain and requested medical care. Blackmore did not receive medical care and continued to complain of serious abdominal pain. Blackmore subsequently filed a health care request in which he complained of "sharp" and "extreme" abdominal pain. Blackmore reported that he had been experiencing abdominal pain for 26 hours and required medical attention "right away." Jail officials placed Blackmore in an observation cell, but still did not provide him with medical treatment. On the morning of May 29, 2000, "over two complete days after his first complaint of pain," Blackmore was examined by a jail nurse, who reported that Blackmore was suffering "classic signs" of appendicitis. Blackmore was transported to a local hospital where he underwent a successful appendectomy later that day.

Blackmore later brought a civil rights action against his jailers, asserting that they violated his constitutional rights by "denying him prompt medical care for a serious medical need." Observing that Blackmore "has not offered any medical evidence to show that he suffered a detrimental effect from not having his surgery earlier," the district court, relying on *Napier*, granted the defendants' motion for summary judgment. *Id.* On appeal, the Sixth Circuit reversed the district court's decision.

With respect to the objective component of the Eighth Amendment analysis, the court of appeals indicated that a prisoner need only show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 896 (citations omitted). A prisoner satisfies this requirement where he establishes

that he was experiencing "serious medical needs." *Id.* With respect to this requirement, the court observed that "[m]ost other circuits" hold that a medical need is objectively serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897.

The court noted that it had previously (in unpublished opinions) evaluated the seriousness of a prisoner's medical needs by this "obviousness approach." However, the court further noted that this "obviousness standard for determining a serious medical need is distinct from a separate branch of Eighth Amendment decisions where the seriousness of a prisoner's medical needs may *also* be decided by the *effect* of delay in treatment." *Id.* (emphasis in original). Thus, the Court concluded that

> the verifying medical evidence requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care. . .In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's deliberate indifference claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Id.* at 898.

To underscore its conclusion, the Court further stated that

> [t]o the extent our previous opinions would benefit from clarification, we hold today that where a plaintiff's claims arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence to show that, even after receiving the delayed necessary treatment, his medical condition worsened or deteriorated. Instead, it is sufficient to show that he actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame.

*Id.* at 899-900 (internal citations omitted).

Finding that Blackmore "exhibited obvious manifestations of pain and injury" from which a jury could conclude that he was experiencing "a serious need for medical care that was so obvious that even a layperson would easily recognize the necessity for a doctor's attention," the Sixth Circuit reversed the district court's decision granting the defendants' motion for summary judgment. *Id.*

In support of her motion for summary judgment Defendant Merlau misinterprets the nature of Plaintiff's claim and, furthermore, misinterprets the authority applicable to Plaintiff's claim. Defendant Merlau argues that Plaintiff is wrongfully blaming her for his failure to receive his medication on October 6, 2004. (Dkt. #119 at 8). This is not accurate. Plaintiff has instead asserted that Defendant Merlau violated his Eighth Amendment rights when she refused - on October 7, 2004 - to take any action whatsoever to assist Plaintiff obtain prescriptions which the parties do not dispute Plaintiff required.

In this respect, the Court notes that Defendant Merlau does not dispute Plaintiff's factual allegations. Instead, Defendant Merlau asserts that because the medications at issue were allegedly "self-dispensed" she had absolutely no obligation to Plaintiff in this matter. (Dkt. #119, Merlau Affidavit). Specifically, Defendant Merlau asserts the following:

> I did not deny Plaintiff any of his medications. These medications are self-dispensed. Medication renewals or refills for self-dispensed medications are not the responsibility of the nursing staff. If a prisoner needs a refill of a medication, he is instructed to contact the pharmacy by using a medication refill form.

*Id.*

The Court is quite disturbed, but unfortunately not surprised, by Defendant Merlau's position. According to Defendant Merlau it was simply not her job to provide medical care or assistance to Plaintiff in this instance. Defendant Merlau justifies her complete lack of action in this matter by asserting that because

Plaintiff "managed to survive two days[1] without the medications [his] needs could not have been that serious." (Dkt. #119 at 8). Defendant Merlau has cited no authority for the proposition that the Eighth Amendment is properly invoked only in circumstances involving the death of a prisoner.

As discussed above, to prevail on his Eighth Amendment claim Plaintiff must first show that he was "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff can satisfy this requirement by demonstrating that he was experiencing "serious medical needs." As previously noted, the Sixth Circuit has held that a medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Defendant Merlau does not refute Plaintiff's allegation that she refused to take any action on October 7, 2004, to help Plaintiff obtain his prescriptions for Prilosec,[2] Imdur,[3] and Lopressor.[4] In the Court's estimation, a reasonable juror could conclude that Plaintiff's medical condition, which necessitated the prescription of such medications, was sufficiently serious to satisfy the objective prong of the Eighth Amendment analysis. In this respect, the Court emphasizes that Plaintiff was not prescribed medication to

---

[1] Defendant Merlau has submitted evidence which purports to establish that Plaintiff received the medication at issue on October 8, 2004. (Dkt. #119, Exhibit D). Plaintiff has not contested this assertion.

[2] Prilosec is a medication used to treat or prevent frequent heartburn. *See* About Prilosec OTC, *available at*, http://www.prilosecotc.com/about.jsp (last visited on May 16, 2007).

[3] Imdur is a medication which dilates the blood vessels making it easier for the heart to pump sufficient blood flow throughout the body. *See* Imdur, *available at*, http://www.drugs.com/imdur.html (last visited on May 16, 2007). Imdur is prescribed to prevent angina attacks and patients are warned not to stop taking Imdur suddenly as such "could cause a severe angina (chest pain) attack." *Id*.

[4] Lopressor is used to treat hypertension and angina. *See* Lopressor, *available at*, http://www.rxlist.com/cgi/generic/metopro_ids.htm (last visited on May 16, 2007). Lopressor is also used to treat patients "with definite or suspected acute myocardial infarction to reduce cardiovascular mortality." *Id*. Patients are warned to "not stop using this drug without first consulting your doctor" because "[y]our condition may become worse when the drug is suddenly stopped." *See* Metoprolol, *available at*, http://www.medicinenet.com/metoprolol-oral/article.htm (last visited on May 16, 2007).

treat a minor or de minimis ailment, but was instead prescribed medication to treat or prevent what appears to be a serious heart ailment.

As for whether Defendant Merlau possessed a sufficiently culpable state of mind, the Court finds that a reasonable juror could find that such was the case. Defendant Merlau does not dispute that Plaintiff required the medications at issue or that Plaintiff was without these medications when he requested her assistance in obtaining refills of such. Defendant Merlau acknowledges that she failed to act when Plaintiff asked for her assistance in obtaining his medications. Moreover, as previously noted, it appears that Plaintiff could have experienced serious medical consequences as a result of being forced to suddenly discontinue the medications in questions.

In sum, when Plaintiff requested assistance in obtaining necessary medications to treat a serious medical condition, Defendant Merlau refused to act. Summary judgment is simply not appropriate in such a circumstance. Accordingly, the Court recommends that Defendant Merlau's motion for summary judgment as to this particular claim be denied.

B.  Plaintiff's Claim against Defendant Parker

Plaintiff underwent surgery to remove a pilonidal cyst in 1997. Plaintiff asserts that between February and April 2005 Defendant Parker refused his request for treatment of the alleged complications he was experiencing from such. Plaintiff asserts that Defendant Parker's refusal violated his Eighth Amendment right to be free from cruel and unusual punishment.

In support of her motion for summary judgment Defendant Parker has submitted (under seal) copies of Plaintiff's medical records. (Dkt. #119, Exhibit C). These records reveal that Plaintiff was examined on February 1, 2005, to evaluate his condition relative to his pilonidal cyst. *Id.* Defendant Parker

asserts that Plaintiff was scheduled to be reexamined on March 31, 2005, but that it was necessary to reschedule this appointment. (Dkt. #119, Parker Affidavit). Plaintiff has not presented any evidence calling into question this assertion. According to Plaintiff's medical records he was examined on April 19, 2005, to "re-check" his condition relative to his pilonidal cyst. (Dkt. #119, Exhibit C). The Court further notes that between the dates of February 1, 2005, and April 19, 2005, Plaintiff was examined by health care providers more than one dozen times. *Id.*

Thus, Plaintiff's claim that he was refused medical treatment is rebutted by the evidence submitted by Defendant Parker. Moreover, to the extent that Plaintiff's amended complaint is interpreted as asserting the claim that his request for medical treatment was delayed (rather than denied), the result is the same. Because Plaintiff has not presented evidence that he experienced "an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention," he must present verifying medical evidence demonstrating that as a result of any delay in treatment his condition worsened or deteriorated. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 896-900 (6th Cir. 2004). In sum, Defendant Parker has established that she was not deliberately indifferent to Plaintiff's serious medical needs. Accordingly, the Court recommends that Defendant Parker is entitled to summary judgment as to this claim.

### III.     Plaintiff's Motion for Summary Judgment

In his amended complaint, Plaintiff asserts that Defendant Gelabert has denied treatment to Plaintiff for "recurring problems" resulting from his 1997 pilonidal cyst surgery. (Dkt. #76 at ¶ 25). Plaintiff asserts that Defendant Gelabert obstructed, altered, or changed Plaintiff's medical treatment in retaliation for Plaintiff having been granted "partial discovery" in this matter. *Id.* at ¶ 26. Plaintiff further asserts that

Defendant Gelabert negligently failed to "properly contain an outbreak of the Methicillin Resistant Staphylococcus Aureus (MRSA)." Plaintiff asserts that he is entitled to summary judgment as to these claims.

Plaintiff has submitted no evidence in support of his motion for summary judgment, but has instead simply relied on the allegations in his various pleadings. Summary judgment is not appropriate in such circumstances. Accordingly, the Court recommends that Plaintiff's motion for summary judgment be denied.

### CONCLUSION

As discussed herein, the Court recommends that Defendant Parker's and Merlau's Motion to Dismiss, (dkt. #104), be **granted in part and denied in part**, Plaintiff's Motion for Summary Judgment, (dkt. #113), be **denied**, and Defendant Parker's and Merlau's Motion for Summary Judgment, (dkt. #118), be **granted in part and denied in part**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  July 6, 2007

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge